**NOT FOR PUBLICATION**                                                    [20]


## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| MICHAEL GARRETT, | : | Civil Action No. 05-157 (FLW) |
| | : | |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| | : | |
| WARDEN C.J. DEROSA, et al., | : | |
| | : | |
| Defendants. | : | |

---

**WOLFSON, UNITED STATES DISTRICT JUDGE**

Before the Court is Defendants' Motion to Dismiss the Complaint of Plaintiff Michael

Garrett, pro se, who is currently confined at the United States Penitentiary at Lewisburg,

Pennsylvania.[1]  Because Defendants rely on evidence outside of the pleadings, they request their

Motion be treated as one for Summary Judgement.  Plaintiff alleges that Defendants retaliated

against him after he refused to become a confidential informant, and that Defendants violated the

Eighth Amendment when they transferred him to a correctional institution where he was

assaulted by another inmate Defendants allegedly knew was hostile toward Plaintiff.  Defendants

do not, on this Motion, challenge Plaintiff's specific allegations, but rather, they assert as an

affirmative defense that Plaintiff has failed to comply with the Prison Litigation Reform Act, 42

---

[1]  Plaintiff's claims arise out of alleged mistreatment while he was housed at the Federal
Corrections Institution at Fort Dix, New Jersey ("FCI Fort Dix").  The Defendants are C.J. DeRosa,
Warden at FCI Fort Dix; and four additional FCI Fort Dix employees: Discipline Hearing Officer Steve
Morton, Lieutenant Thomas Martz, S.I.A. Agent O'Dell, and Captain "John Doe."

U.S.C. § 1997e(a), which requires an inmate to exhaust completely all administrative remedies before seeking judicial review of alleged constitutional violations.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.  For the reasons that follow, Defendants' Motion for Summary Judgment is granted.

I.      FACTS

On January 12, 2005, Plaintiff filed a Complaint in which he alleges violations of his constitutional rights and seeks relief pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). See Plaintiff's Complaint ("Compl.").  Specifically, Plaintiff asserts that on June 30, 2002, while he was incarcerated at the FCI Fort Dix, Defendants O'Dell and Marts ordered him to become a "confidential informant" and to gather information relating to a particular staff member suspected of introducing contraband into the facility. Compl. at ¶ 20. According to Plaintiff, these Defendants told him that if he did not provide assistance, they would make his life a "living hell" and would suspend his visiting and telephone privileges. Id. Plaintiff refused the alleged order to become a confidential informant. Id.

Plaintiff alleges that in retaliation for his refusal to comply with their order, On April 29, 2003, Defendants O'Dell and Martz caused their subordinate, Corrections Officer Thornton, to submit a false incident report about Plaintiff. Compl. at ¶ 24.  The alleged false incident report led to a disciplinary proceeding on May 25, 2003, at which Defendant Morton sanctioned Plaintiff to six years loss of visiting and telephone privileges and forfeiture of 215 days good conduct time. Id.  Plaintiff also alleges that on August 25, 2003,  Defendants O'Dell and Doe placed him in a Special Housing Unit ("SHU") without explanation. Compl. at ¶ 25.  In response, Plaintiff alleges that he filed an administrative complaint on October 18, 2003, in which he

complained "of being targeted by [Defendants] O'Dell and Martz in retaliation." Compl. at ¶ 26.

Two days later, Plaintiff alleges he was the subject of another "false" disciplinary report. Compl.

at ¶ 27.  At a subsequent disciplinary hearing, held November 14, 2003, Plaintiff alleges that

Defendant Morton "knowingly provided and advanced false documentary evidence," which

resulted in sanctions including loss of forty days good conduct time, sixty days disciplinary

segregation and twenty-one months of administrative segregation. Compl. at ¶ 28-29.  Defendant

Morton also recommended Plaintiff be transferred to another facility. Compl. at ¶ 29.

In early 2004, Plaintiff was transferred to the Federal Correctional Institution at Fairton,

New Jersey ("FCI Fairton"), where inmate Derek Johnson was housed. Compl. at ¶ 30.  Plaintiff

alleges that prior to transferring him to FCI Fairton, Defendants were aware that Plaintiff had a

hostile relationship with Johnson. Id.  Plaintiff alleges that Defendants Marts and O'Dell

deliberately misled Johnson into believing that Plaintiff had informed on Johnson to prison

officials. Id.  On February 29, 2003, shortly after being transferred, Plaintiff was assaulted and

sustained significant injuries. Compl. at ¶ 31.  Plaintiff was hospitalized, and required emergency

surgery to close his wounds; he also suffered cardiac arrest and continues to suffer from anxiety.

Id.

In a written Opinion filed February 7, 2005, I evaluated the merits of Plaintiff's claims,

pursuant to 28 U.S.C. § 1915A and 42 U.S.C. § 1997e. Garrett v. DeRosa, No. 05-157 (February

7, 2005).  By Order filed the same day, I allowed Plaintiff's retaliation and Eighth Amendment

claims based upon his transfer to FCI Fairton to proceed, but dismissed his remaining retaliation

and due process claims without prejudice.[2]   On June 28, 2005, Defendants filed Answers to

Plaintiff's Complaint.  On June 30, 2005, Plaintiff sought leave to file an Amended Complaint.

While that application was pending, Defendants filed this Motion.  On September 12, 2005,

Plaintiff filed written Opposition to Defendants' Motion.  On October 7, 2005, Magistrate Judge

Joel B. Rosen granted Plaintiff's motion to amend, and ordered Plaintiff to file an Amended

Complaint by October 28, 2005.  Plaintiff did not file an Amended Complaint by or after that

date.

On October 27, 2005, Plaintiff filed a second motion to amend, in which he asserted

certain "proposed amended facts."  On December 5, 2005, Judge Rosen granted Plaintiff's

second motion to amend and ordered him to file his Amended Complaint no later than December

20, 2005.  To date, Plaintiff has not filed an Amended Complaint.  Among the "proposed

amended facts" Plaintiff included in his second motion to amend is an additional allegation of

retaliation by Defendants.  Specifically, Plaintiff alleges that on December 2, 2003, while he was

still housed at FCI Fort Dix and residing in the SHU, he was assaulted, while handcuffed, by

another inmate. See Plaintiff's Second Motion to Amend at pg. 7.  Plaintiff asserts that

Defendants Martz, Doe and DeRosa were present in the SHU on the day of the assault, and that

the assault was the result of deliberate retaliation by Defendants. Id.

_____

    [2] In dismissing Plaintiff's retaliation and due process claims arising out of the alleged false
disciplinary charges and alleged deficient procedural safeguards in his May 25, 2003 and November 14,
2003 disciplinary hearings, I relied on the Supreme Court's holding in Edwards v. Balisok, 510 U.S. 641
(1997).  In Edwards, the Court held that a prisoner's claim for damages which challenges the
constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of
good-time credits but which does not necessarily challenge the result, nor seek restoration of the
good-time credits, is not cognizable under 42 U.S.C. § 1983 if a favorable outcome would necessarily
imply the invalidity of the challenged judgment. 510 U.S. at 646-48.  The Court explained that such a
claim could not proceed until the underlying disciplinary finding was invalidated through habeas corpus
or some other appropriate means. Id. at 648.

### III.   DISCUSSION

#### A.  Standard of Review

A motion to dismiss for failure to state a claim tests the legal sufficiency of the allegations contained in a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993).  When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must determine whether the allegations in the complaint, construed in the light most favorable to the plaintiff, present a set of facts which, if true, would entitle the plaintiff to the relief he seeks. Gibbs v. Roman, 116 F.3d 83, 86 (3d Cir.1997) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996)).  A complaint will be dismissed only if the plaintiff could not prove any set of facts which would entitle him to relief. Nami, 82 F.3d at 65 (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Rule 12(b) provides that "[i]f, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." See Carter v. Stanton, 405 U.S. 669, 671 (1972); see also Greer v. Smith, 2003 WL 1090708, *1 (3d Cir. March 10, 2003).  Such is the case here.  In support of their argument, Defendants rely, in part, on the Declaration of Michael D. Tafelski, Deputy Regional Counsel for the Federal Bureau of Prisons, and certain exhibits attached thereto which relate to Plaintiff's use of the prison administrative remedy process.  Tafelski's Declaration and the attached exhibits constitute "matters outside the pleadings."  Consequently, and in accord with Defendants' request, I treat Defendants' Motion to Dismiss as one for Summary Judgment and dispose of it pursuant to Fed. R. Civ. P. 56.

Summary judgment is appropriate where there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine issue of material fact is one that will

permit a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  To show that a genuine issue of material fact exists, the

nonmoving party may not rest upon mere allegations, but must present actual evidence in support

thereof.  Id. at 249 (citing First Nat'l Bank of Arizona v. Cities Svc. Co., 391 U.S. 253, 290

(1968)).  In evaluating the evidence, the Court must "'view the inferences to be drawn from the

underlying facts in the light most favorable to the [nonmoving] party.'"  Curley v. Klem, 298

F.3d 271, 276-77 (3d Cir. 2002) (quoting Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999)).

Although pro se complaints are entitled to liberal construction, Haines v. Kerner, 404 U.S. 519,

520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992), the Plaintiff must still set

forth facts sufficient to survive summary judgment.  Shabazz v. Odum, 591 F. Supp. 1513 (M.D.

Pa. 1984); see also Kaiser v. Bailey, 2003 WL 21500339 at * 3 (D.N.J. July 1, 2003) (Irenas, J.).

### B.  Prison Litigation Reform Act

Defendants proceed solely on the ground that Plaintiff has failed to exhaust his

administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §

1997e(a).  The PLRA states in relevant part: "[n]o action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a).  Congress enacted the PLRA in 1996, "largely in response to

concerns about the heavy volume of frivolous prison litigation in the federal courts." Nyhuis v.

Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Alexander v. Hawk, 159 F.3d 1321, 1326 n.11

6

(6th Cir.1999) (citing 141 Cong. Rec. H14078-02, H14105 (daily ed. Dec. 6, 1995)).  Section

1997e(a) was designed to reduce the quantity and improve the quality of prisoner lawsuits and

afford corrections officials an opportunity to address complaints internally before allowing the

initiation of a federal suit.  Additionally, internal review filters out frivolous claims and

facilitates adjudication of those claims that are ultimately brought to federal court by providing

an administrative record outlining the controversy. See Booth v. Churner, 532 U.S. 731, 739

(2001).

The PLRA applies to Bivens claims. Nyhuis, 204 F.3d at 68.  The Third Circuit has held

that the phrase "conditions of confinement" applies to actions that "relate to the environment in

which prisoners live, and the nature of the services provided therein." Booth, 206 F.3d at

300-301.  The Third Circuit has also held that the PLRA's exhaustion requirement applies to

civil actions including those in which prison officials have allegedly attempted to "make

[prisoners'] lives worse." Id.  Additionally, the Third Circuit has refused to apply a futility

exception to the PLRA's exhaustion requirement. See, e.g., Nyhuis, 204 F.3d at 71; Booth, 206

F.3d at 300.  In other words, the PLRA requires an inmate to exhaust all administrative remedies

prior to bringing a federal action challenging prison conditions, whether or not such remedies

provide the inmate with the relief the inmate says he or she desires in the federal action. Nyhuis,

204 F.3d at 71.  However, "[c]ompliance with the administrative remedy scheme will be

satisfactory if it is substantial." Id. at 77-78; see also Miller v. Tanner, 196 F.3d 1190, 1194 (11th

Cir.1999) (applying substantial compliance doctrine, and holding that plaintiff exhausted

administrative remedies after prisoner was told "[w]hen any grievance is terminated at the

institutional level you do not have the right to appeal").  Failure to exhaust administrative

remedies is an affirmative defense, and the defendant bears the burden of pleading and proof.

Ray v. Kortes, 285 F.3d 287, 295 (3d Cir. 2002).

### C.  The Administrative Remedy Program

The administrative remedies set forth in 28 C.F.R. § 542.10 et seq. ("Administrative

Remedy Program") establish a multi-step grievance procedure which inmates must exhaust

before filing a civil complaint in federal court. Porter v. Nussle, 534 U.S. 516, 524 (2002); Booth

v. Churner, 532 U.S. 731, 741 (2001); Spruill v. Gillis, 372 F.3d 218, 227-230 (3d Cir. 2004).

Before initiating the formal grievance procedure, an inmate must attempt to informally resolve

the dispute with the institutional staff in the facility in which he is confined (Form BP-8). 28

C.F.R. § 542.13.  If informal resolution efforts fail to resolve the inmate's grievance, the inmate

must file a formal written Administrative Remedy Request ("Request"), also known as a "Form

BP-9," within twenty calendar days of the event that forms the basis for the grievance. 28 C.F.R.

§ 542.14.  Upon the Warden's denial of this Request, the inmate must file an Appeal to the

Regional Director, also known as a "Form BP-10," within twenty days of the Warden's response.

28 C.F.R. §§ 542.15.  Should the Regional Director deny this Appeal, the final step in the

Administrative Remedy Program is an Appeal to the General Counsel of the Bureau of Prisons at

its Central Office, also known as a "Form BP-11". Id.  The administrative remedy process is

exhausted upon the General Counsel's denial of the inmate's appeal. See Kaiser, 2003 WL at *5.

See also Declaration of Michael D. Tafelski ("Tafelski Dec."). at ¶ 3.

Each Request must set forth a single complaint or a reasonable number of closely related

issues. 28 C.F.R. § 542.14(c).  If an inmate includes multiple unrelated issues in a single

Request, the Request will be returned to the inmate with notice to the inmate to use a separate

Request form for each unrelated issue. Id.  The Administrative Remedy Coordinator

("Coordinator") at any level may reject a Request or Appeal that does not comply with the

requirements of the Administrative Remedy Program. 28 C.F.R. § 542.17.  If a Request or

Appeal is rejected, the Coordinator so advises the inmate and provides the inmate with a reason

for the rejection. Id.  If the rejection is based on a defect that can be cured, the inmate is afforded

an opportunity to correct and resubmit the Request or Appeal. Id.  When a Request or Appeal is

rejected and no reason is provided, the inmate may appeal such rejection to the next appeal level.

Id.  The Coordinator at the next appeal level may affirm the rejection, direct that the submission

be accepted at the lower level, or accept the and file the submission. Id.  The Bureau of Prisons is

not required to maintain copies of rejected Requests. Tafelski Dec. at ¶ 6.

If an inmate reasonably believes that the issue about which he is complaining is

"sensitive" and that filing a formal Request would jeopardize his safety, the inmate may submit

his Request directly to the Regional Director. 28 C.F.R. §§ 542.14(d)(1).  The Regional

Administrative Request Coordinator may agree that the Request is sensitive, and accept it, or

advise the inmate in writing that the request is not sensitive and instruct the inmate to submit the

request to the Warden. Id.  If the Request is rejected as not sensitive, the inmate is entitled to a

"reasonable extension of time" to resubmit the Request at the institutional level. Id.  In other

instances, an inmate may be granted an extension of time to file a Request or an Appeal if the

inmate demonstrates a valid reason for his delay. 28 C.F.R. § 542.14(b).  Examples of valid

reasons for delay include, but are not limited to, an extended period of transit or incapacity. Id.

In this case, Plaintiff has filed approximately forty-four Requests for Administrative

Remedies arising out of the conditions of his confinement in the custody of the Bureau of

Prisons.[1] Tafelski Dec. at ¶ 6.  In his Declaration, Tafelski states that he has "reviewed the computerized indexes of all 44 administrative remedies filed by Plaintiff while in the custody of the BOP" and, based on that review, has identified "three administrative remedies relevant to" the claims at issue here. Tafelski Dec. at ¶ 6, 7.  Tefelski asserts that each of Plaintiff's three relevant Requests fail to comply with the Administrative Remedy Program and, therefore Plaintiff has not exhausted completely his administrative remedies. Id. at ¶ 6.  A computer record of each of Plaintiff's three Requests and their dispositions is attached to Tafelski's Declaration. See Tafelski Dec. at Exhibit 3 (No. 314984) ("Ex. 1"), 4 (No. 322752) ("Ex. 2"), and 5 (No. 325787) ("Ex. 3").  I examine each below.

**1. Request For Administrative Remedy No. 314984**

On October 20, 2003, the Bureau of Prisons Northeast Regional Office ("Regional Office") received Request For Administrative Remedy No. 314984 which Plaintiff filed as "sensitive" and in which Plaintiff set forth numerous allegations asserting misconduct by several prison officials. Tafelski Dec. at ¶ 8(a) (discussing Ex. 3).  On October 29, 2003, the Regional Administrative Remedy Coordinator rejected the Request on the ground that the grievances related therein were not sensitive and should be filed locally. Id.  On October 24, 2003, while the Request was pending, Plaintiff submitted to the Regional Office a supplemental letter outlining further grievances. Id. at ¶ 8(b).  This supplemental letter was treated as a separate but related sensitive Request and rejected on October 30, 2003 for not being sensitive. Id. See also Ex. 3, pg. 2.  On November 21, 2003, Plaintiff submitted a regular Request to the institution, outlining the

---

[1] Defendant has been confined in various federal correctional institutions since April 6, 2001, when he was sentenced to a term of eighty-seven months following his conviction on dug distribution and gun charges.

grievances presented in his prior sensitive Requests. Id. at ¶ 8(c).  On the same day, Defendant

DeRosa rejected the Request as untimely. Id.  On December 8, 2003, Plaintiff resubmitted the

Request to the institution, and, on December 8, 2003, Defendant DeRosa again rejected it as

untimely. Id. at ¶ 8(d).

On December 19, 2003, the Regional Office received Plaintiff's Appeal from his rejected

institutional Requests. Id. at ¶ 8(e).  The Regional Office determined that the Requests were

untimely filed at the institutional level and affirmed the rejections. Id.  On January 21, 2004, the

Central Office received Plaintiff's Appeal from the rejection of his Requests by the Regional

Office. Id. at ¶ 8(f).  On the same day, the Central Office concluded that the Requests were

untimely filed at the institutional level and affirmed the rejections. Id.

Though the computer record of the series of filings related to Plaintiff's Request For

Administrative Remedy No. 314984 does not provide specific detail of the substance of

Plaintiff's grievances, the record establishes that the Request was not timely filed.  In his

Complaint, Plaintiff asserts that he filed a Request on October 18, 2003, arising out of his

treatment at FCI Fort Dix by Defendants O'Dell and Martz as early as April 29, 2003, when they

allegedly caused a subordinate to submit a false incident report about him, Compl. at ¶ 24, and as

late as August 25, 2003, when Defendants O'Dell and Doe placed him in SHU without

explanation. Compl. at ¶ 25.  Plaintiff's first Request was received on October 20, 2003, and is

undoubtedly the Request referenced in his Complaint.  As it relates to the events of April 29,

2003 or August 25, 2003, the Request was untimely because it was not originally filed "within

twenty calendar days of the event that forms the basis for the grievance." 28 C.F.R. § 542.14.

To have been timely, Plaintiff's Request should have been filed on or before September

11

15, 2003, twenty days after August 25, 2003.  Even assuming a liberal twenty-day "reasonable

extension of time" to resubmit the Request at the institutional level, pursuant to 28 C.F.R. §§

542.14(d)(1), Plaintiff should have filed the Request by October 6, 2003.  Instead, Plaintiff

waited until October 20, 2003 to file his original sensitive Request.  The record does not reflect

that Plaintiff requested or received an extension of time to file the Request, nor that any

legitimate basis for such an extension existed.  Accordingly, because it was not timely filed,

Plaintiff's Request For Administrative Remedy No. 314984 cannot have satisfied the PLRA's

exhaustion requirement.

### 2.  Request For Administrative Remedy No. 322752

On January 12, 2004, Plaintiff's Request For Administrative Remedy No. 322752 was

received at FCI Fort Dix. Tafelski Dec. at ¶ 9(a) (discussing Ex. 4).  In that Request, Plaintiff

alleged that prison staff acted inappropriately during an assault in which Plaintiff was involved.

Id.  Defendant DeRosa rejected the Request on January 26, 2004, as not timely filed. Id.  On

January 29, 2004, the Regional Office received Plaintiff's Appeal from that rejection. Id. at ¶

9(b).  On February 2, 2004, the Regional office determined that the Request was not timely filed

at the institutional level and affirmed the rejection. Id.  The record does not contain evidence that

Plaintiff filed an Appeal with the Central Office from the rejection of his Request by the

Regional Office. Id.

The computer record of Plaintiff's Request For Administrative Remedy No. 322752 does

not provide specific detail about the substance of the grievance.  However, in the "proposed

amended facts" included in Plaintiff's second motion to amend, Plaintiff describes an assault at

the hands of another inmate at FCI Fort Dix on December 2, 2003. See Plaintiff's Second Motion

to Amend at pg. 7.  Specifically, Plaintiff alleges that he was assaulted in the SHU while

handcuffed and unable to defend himself, and suggests that Defendants Martz, Doe and DeRosa,

who were present in the SHU that day, allowed the assault to occur, or ignored it in retaliation

against him. Id.  The January 12, 2003 Request undoubtedly refers to the December 2, 2003,

assault.  However, Plaintiff again failed to timely file the Request within twenty days of the

assault and allegedly inappropriate conduct by Defendants. See 28 C.F.R. § 542.14.  Indeed, to

have been timely, Plaintiff's Request should have filed on or before December 22, 2003.

Moreover, Plaintiff never filed an Appeal with the Central Office from the rejection of his

Request by the Regional Office. Tafelski Dec. at ¶ 9(a).  Accordingly, he failed to satisfy the

PLRA's exhaustion requirements with respect to Request For Administrative Remedy No.

322752.

   **3.  Request For Administrative Remedy No. 325787**

   On February 3, 2004, Plaintiff was transferred from FCI Fort Dix to FCI Fairton.

Tafelski Dec. at ¶ 1.  On February 26, 2004, Plaintiff submitted Request For Administrative

Remedy No. 325787 at FCI Fairton, in which he alleged complaints against prison staff members

at FCI Fort Dix. Id. at ¶ 10(a) (discussing Ex. 5).  The Warden at FCI Fairton rejected the

Request on February 26, 2004, on the basis that it raised multiple, unrelated issues and because

Plaintiff did not attempt to resolve his grievance informally. Id.  The Warden advised Plaintiff

that he could resubmit his grievances in separate Requests within ten days from the date of the

rejection notice. Id.  The record does not contain evidence that Plaintiff submitted conforming

Requests, nor any further material related to the underlying grievances recorded in Request For

Administrative Remedy No. 325787. Id.

13

Like Plaintiff's other two Requests, the computer record of Plaintiff's Request For Administrative Remedy No. 325787 does not provide specific detail about the substance of the underlying grievance. Id.  The Request was filed February 26, 2004. Id.  The only relevant allegation from Plaintiff's Complaint which relates to the Request is Plaintiff's claim that Defendants violated the Eighth Amendment's bar against cruel and unusual punishment by transferring him to FCI Fairton, where they knew an inmate hostile to Plaintiff resided and whom, according to Plaintiff, Defendants Marts and O'Dell had misled into believing that Plaintiff had informed upon to prison officials. See Compl. at ¶ 31.  To be sure, the Request cannot relate to the assault Plaintiff suffered at FCI Fairton on February 29, 2004, because it was filed three days before the assault occurred.

The record makes clear that Plaintiff never followed-up Request For Administrative Remedy No. 325787, which was rejected on February 26, 2004, with conforming Requests, as instructed by the Warden at FCI Fairton. Tafelski Dec. at ¶ 10(a).  I note that Plaintiff had only three days within which to do so before he suffered a serious assault at the hands of another inmate.  That assault no doubt resulted in an "extended period of time during which [Plaintiff] was physically incapable of preparing a Request or Appeal." See 28 C.F.R. § 542.14(b). However, Plaintiff eventually recovered from his injuries, and the record lacks evidence that he ever requested, or received, an extension of time within which to file conforming Requests related to the substance of his earlier rejected grievance.  Nor does the record reflect that Plaintiff filed an Appeal from the rejection of his original institutional Request.  Accordingly, Plaintiff failed to exhaust his administrative remedies with regard to the substance of the grievances contained in Request For Administrative Remedy No. 325787.

14

In his Opposition to Defendants' Motion, Plaintiff does not present evidence of a material factual dispute regarding his failure to comply with the PLRA and its mandate that an inmate exhaust completely all administrative remedies before initiating suit. See Plaintiff's "Reply to Defendants' Motion To Dismiss," ("Pfs Opp.") at pg 1. Indeed, Plaintiff does not challenge Defendants' argument that Plaintiff failed to exhaust his administrative remedies. Rather, Plaintiff asserts that the three Requests Tafelski deems relevant to this litigation do not form the basis of his claims, and thus, he need not have exhausted his administrative remedies with respect to any of them.[1] Id. Plaintiff's argument's are without merit. There is no question that the three Requests presented by Defendants and analyzed above constitute Plaintiff's attempt to utilize the Administrative Remedy Program, and correlate to the allegations that form the factual basis of his Complaint. In addition, as discussed above, there is no genuine factual dispute as to Plaintiff's failure to comply with the PLRA and exhaust completely all of the administrative remedies available to him with respect to the claims in his Complaint. Accordingly, summary judgement is appropriate.

## IV.    CONCLUSION

The uncontroverted evidence demonstrates that Plaintiff did not timely pursue and exhaust the administrative remedy procedures related to the claims in his Complaint. Furthermore, Plaintiff does not dispute the fact that he failed to do so. Accordingly, because no genuine issue of material fact exists as to Plaintiff's failure to comply with the PLRA before

---

[1] In addition, Plaintiff argues that he attempted to amend his Complaint "to submit extrinsic prior bad acts evidence for the purpose of proving Defendants' motive and pre-disposition to commit acts of misconduct with which they are charged." Pfs Opp. at pg 2. That argument does not address the basis for Defendants' Motion and is wholly inapposite.

initiating this suit, Defendants' Motion to Dismiss treated as a Motion for Summary Judgement is granted.

An appropriate Order shall follow.

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Date: March 2, 2006.